LEVINE, J.
The issues presented for our review are whether the trial court erred in allowing the state, during a criminal prosecution, to question witnesses and argue in closing argument that appellant had hired a law firm to file a civil suit related to the incident for which appellant was arrested. We find, specifically, that the trial court erred in allowing the state to question a doctor, testifying for appellant, as to whether appellant had hired a civil attorney to file a lawsuit. We further find that the error was not harmless, as it was compounded by the questioning of appellant’s wife as to whether appellant had hired a civil attorney and the state’s references in closing argument to appellant “gearing up for a lawsuit.” We, therefore, reverse appellant’s conviction and sentence for resisting an officer with violence.
Appellant’s wife called paramedics due to appellant not breathing and being unresponsive. A paramedic arrived and saw *987 appellant lying on Ms stomach and beginning to wake up. The paramedic asked appellant whether he was okay. After initially appearing confused, appellant started screaming and then began to approach the paramedic as if ready to fight. The paramedic testified that appellant was “standing and squaring off, clenched fist, irate, angry, mad.” The paramedic motioned for his crew to stay back from appellant.
Meanwhile, a patrol officer from the Pembroke Pines Police Department arrived as a result of a call regarding an unresponsive male. The officer asked appellant for his name and asked appellant to calm down, but appellant did not respond. Appellant was “all over the room” and put his hands on the officer’s shoulder, as well as the shoulder of another officer who was present. After' appellant ripped off the closet doors and began to search through the drawers in the closet, one officer decided to handcuff appellant for officer safety. The officer handcuffed one of appellant’s wrists and blocked punches from appellant’s other hand.
Appellant violently swung his arms back and forth towards the officer, who was struck while on the ground. At this point there was blood on the floor, which had come from the officer’s head. Appellant ran out of the room and the other officer chased appellant with her gun drawn. This officer commanded appellant to get down and appellant shook his head “no.” Appellant ran into the kitchen, still agitated, and then started to come back toward the officers. One of the officers then fired a shot into appellant’s abdomen. Appellant tried to get up but the officer pushed him back to the ground. Appellant was tased several times and it took multiple officers to subdue him. Appellant was charged with battery on a law enforcement officer and resisting an officer with violence.
At trial, a neurologist, Dr. Cutler, testified for the defense. The neurologist stated that appellant had a seizure that day, and a person who had just had á seizure would respond poorly to commands, and may act confused, aggressive, combative, and agitated.
The following cross-examination of Dr. Cutler was elicited by the state:
Q. So again, getting back to that first visit of his, July 8th, 2010, [appellant] was referred to you by an individual named Mr. McDonald, is that correct?
A. Yes.
Q. Do you know that individual’s full name?
A. It says here David McDonald.
Q. Is that the law firm of McClusky and McDonald?
A. Yes.
Q. That person is not in the courtroom today; is he, Mr. McDonald?
A. I don’t know.
Q. He has referred people to you in the past; hasn’t he?
A. He may have.
Q. He is a civil attorney?
A. I don’t know sir. I don’t know him very well.
Q. You are not sure if he has referred people to you in the past?
A. I’m not sure.
[[Image here]]
Q. Would looking at a copy of your deposition refresh your recollection, regarding whether you had patients referred from Mr. McDonald in the past?
A. It may help, yes.
[[Image here]]
A. I think basically what I said was that if I have seen patients for him, I *988 said it is possible but I really don’t know.
Q. Okay. Then do you have any personal knowledge as to whether Mr. McDonald was obtained as a civil attorney by [appellant]?
(emphasis added).
At this point, appellant objected to relevance. At sidebar, the state represented that appellant was suing the City of Pembroke Pines. The trial court overruled the objection, finding that the inquiry was relevant to Dr. Cutler’s credibility.
Upon further questioning, Dr. Cutler testified that he did not know for sure whether Mr. McDonald was retained as a civil attorney by appellant. Dr. Cutler stated that “someone else” could be making payment on appellant’s behalf, but stated he had no idea where money was coming from for payment for his time.
During the testimony of appellant’s wife, the state on cross-examination asked whether appellant had been referred to Dr. Cutler by Mr. McDonald. The state further asked appellant’s wife, “[D]o you know if your husband has hired a civil attorney as a result of this?” Appellant objected on the grounds of relevancy and calling for speculation. The trial court overruled the objections with the qualification that appellant’s wife could answer if she knew. After appellant’s wife answered “[n]o,” appellant withdrew his objection.
Finally, the state made the following closing argument:
I submit to you that as soon as this happened, as soon as [appellant] got in trouble with the law, and perceived an injury to himself, he started thinking. How am I going to defend against this case, this criminal case, that I’m being charged with, and how am I going to get some money out of it.
We have some criminal defense attorneys that he has hired, and they have put on a defense.
However, you have also heard evidence from the doctor, from Dr. Cutler.
He didn’t seem to know a lot about it, but he did know that a Mr. McDonald, a civil attorney, referred [appellant]- to him.
[[Image here]]
What the state would submit to you ... is it is a reasonable inference for you to draw that putting aside whether or not Dr. Cutler is a biased or interested witness.
That what is really at play here is [appellant] is gearing up for a civil lawsuit against the City of Pembroke Pines.
It is a reasonable inference for you to draw that the City of Pembroke Pines has money. We have heard from [appellant’s] wife that at that time he was out of a job.
The state conceded that it was reasonable for the jury to infer that appellant did in fact suffer from some sort of a disorder. The state asked the jury whether appellant got to utilize his disorder “in order to go to a criminal defense and then walk away with money from a civil suit later on down the road.” The state concluded its rebuttal argument by stating that appellant would “have his day in court where we will know all about him, some other jury, on some other case but today this case, our victim, is [the injured officer].”
The jury found appellant not guilty of battery on a law enforcement officer and guilty of resisting a law enforcement officer with violence. This appeal ensues.
We review evidentiary rulings under the standard of abuse of discretion, which is limited by the rules of evidence. Salazar v. State, 991 So.2d 364, 373 (Fla.2008). We review the cross-examination of Dr. Cutler *989 under this standard. As to the state’s closing argument, since appellant did not object, reversal is proper only if the comments constitute fundamental error. Thompson v. State, 88 So.3d 322, 324 (Fla. 4th DCA 2012).
We find that the cross-examination of Dr. Cutler, specifically as to the doctor’s personal knowledge of whom appellant obtained as a civil attorney to sue the City of Pembroke Pines, was not relevant and was therefore improper. “To be relevant, and, therefore, admissible, evidence must prove or tend to prove a fact in issue.” Stano v. State, 473 So.2d 1282, 1285 (Fla.1985); § 90.401, Fla. Stat. (2011). The state contends that the cross-examination of Dr. Cutler was proper as an effort to uncover potential bias. See § 90.608(2), Fla. Stat. (2011). However, in the question that appellant objected to, the state asked Dr. Cutler only whether he knew if appellant had hired a civil attorney. Therefore, since the question had no connection to the doctor, it was not directed at attacking the credibility of the doctor. Additionally, the state asked this question after the doctor had already testified that he did not know whether McDonald was a civil attorney.
The state did not need to prove, as an element of either crime, that appellant hired a civil attorney to sue the City of Pembroke Pines, and as such, the cross-examination was not calculated to elicit relevant evidence. In fact, the only reason to inquire about the identity of appellant’s civil lawyer in a suit against the city was to highlight to the jury that appellant was seeking financial remuneration as a result of this incident. The attempt to prejudice appellant before the jury is further confirmed by the state’s comments in the cross-examination of appellant’s wife and in closing argument. “To determine litigiousness to be the proper subject of cross examination for impeachment purposes would be tantamount to stating that one creates a legal wrong by enforcing one’s rights when they are violated.” Zabner v. Howard Johnson’s Inc. of Fla., 227 So.2d 543, 546 (Fla. 4th DCA 1969).
For this same reason, the cross-examination of appellant’s wife regarding the civil lawsuit and the state’s reference to the civil lawsuit in closing argument were also improper. Although the improper closing argument by the state does not amount to fundamental error, and the objection regarding the improper cross-examination of appellant’s wife was withdrawn, both instances demonstrate why the error in this case is not harmless. When we consider the cumulative effect of the error, we cannot say that the improper questioning of Dr. Cutler was harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
To allow this type of irrelevant evidence not only prejudiced appellant’s right to a fair criminal trial, but would also chill the right of an individual to retain a civil attorney arising out of the same incident. After all, an individual charged with a crime may hesitate to hire a civil lawyer to investigate or pursue civil remedies, if the mere fact of that retention may be brought up in a related criminal trial to his or her detriment.
Throughout our history, “[a] broad right to counsel antedating the Sixth Amendment was so well recognized that the framers took it for granted.” Melton v. State, 56 So.3d 868, 871 (Fla. 1st DCA 2011) (footnote omitted). As stated in Melton:
In view of the anomalous procedures in British criminal courts, it is not surprising that the framers of the American Constitution specifically provided for a right to retain counsel in criminal prosecutions. Because English practice had *990 recognized the right to retain civil counsel, there was no need to reaffirm the prerogative. Therefore, the sixth amendment’s rejection of the English criminal practice does not represent the denial of a right to retain counsel in civil litigation. The existence of such a right has, indeed, been generally assumed in the American legal system.
Id. at 872 (quoting Potashnick v. Port City Constr. Co., 609 F.2d 1101, 1117 (5th Cir. 1980)). Furthermore, “[i]n any judicial proceeding, a party has the right to be represented by counsel of the party’s choosing, where counsel is willing.” Id. See also Myers v. Siegel, 920 So.2d 1241, 1243 (Fla. 5th DCA 2006) (recognizing that “judicial protection” of the right to counsel in civil proceedings “ensures continued public confidence in our system of justice”).
We find that appellant’s other issue on appeal, regarding the state’s alleged comment on appellant’s silence during closing argument, does not constitute fundamental error. We, nevertheless, reverse and remand, as we find that the improper cross-examination of Dr. Cutler, when considered with the improper comments in closing argument and cross-examination of appellant’s wife, constitutes reversible error.

Reversed and remanded for a new trial.

WARNER and GROSS, JJ., concur.